Mr. Justice Clark
 

 delivered the opinion of the Court.
 

 This is a civil action brought by respondent, a stockholder of petitioner J. I. Case Company, charging deprivation of the pre-emptive rights of respondent and other shareholders by reason of a merger between Case and the American Tractor Corporation. It is alleged that the merger was effected through the circulation of a false and misleading proxy statement by those proposing the merger. The complaint was in two counts, the first based on diversity and claiming a breach of the directors' fiduciary duty to the stockholders. The second count alleged a violation of § 14 (a)
 
 [1]
 
 of the Securities Exchange Act of 1934 with reference to the proxy solicitation material. The trial court held that as to this count it had no power to redress the alleged violations of the Act but was limited solely to the granting of declara
 
 *560
 
 tory relief thereon under § 27 of the Act.
 
 [2]
 
 The court held Wis. Stat., 1961, § 180.405 (4), which requires posting security for expenses in derivative actions, applicable to both counts, except that portion of Count 2 requesting declaratory relief. It ordered the respondent to furnish a bond in the amount of $75,000 thereunder and, upon his failure to do so, dismissed the complaint, save that part of Count 2 seeking a declaratory judgment. On interlocutory appeal the Court of Appeals reversed on both counts, holding that the District Court had the power to grant remedial relief and that the Wisconsin statute was not applicable. 317 F. 2d 838. We granted certiorari. 375 U. S. 901. We consider only the question of whether § 27 of the Act authorizes a federal cause of action for rescission or damages to a corporate stockholder with respect to a consummated merger which was authorized pursuant to the use of a proxy statement alleged to contain false and misleading statements viola-tive of § 14 (a) of the Act. This being the sole question raised by petitioners in their petition for certiorari, we will not consider other questions subsequently presented.
 
 *561
 
 See Supreme Court Rule 40 (1) (d)(2);
 
 [3]
 

 Local 1976, United Brotherhood of Carpenters
 
 v.
 
 Labor Board,
 
 357 U. S. 93, 96 (1958);
 
 Irvine
 
 v.
 
 California,
 
 347 U. S. 128, 129-130 (1954).
 

 I.
 

 Respondent, the owner of 2,000 shares of common stock of Case acquired prior to the merger, brought this suit based on diversity jurisdiction seeking to enjoin a proposed merger between Case and the American Tractor Corporation (ATC) on various grounds, including breach of the fiduciary duties of the Case directors, self-dealing among the management of Case and ATC and misrepresentations contained in the material circulated to obtain proxies. The injunction was denied and the merger was thereafter consummated. Subsequently successive amended complaints were filed and the case was heard on the aforesaid two-count complaint. The claims pertinent to the asserted violation of the Securities Exchange Act were predicated on diversity jurisdiction as well as on § 27 of the Act. They alleged: that petitioners, or their predecessors, solicited or permitted their names to be used in the solicitation of proxies of Case stockholders for use at a special stockholders’ meeting at which the proposed merger with ATC was to be voted upon; that the proxy solicitation material so circulated was false and misleading in violation of § 14 (a) of the Act and Rule 14a-9 which the Commission had promulgated thereunder;
 
 [4]
 
 
 *562
 
 that the merger was approved at the meeting by a small margin of votes and was thereafter consummated; that the merger would not have been approved but for the false and misleading statements in the proxy solicitation material; and that Case stockholders were damaged thereby. The respondent sought judgment holding the merger void and damages for himself and all other stockholders similarly situated, as well as such further relief “as equity shall require.” The District Court ruled that the Wisconsin security for expenses statute did not apply to Count 2 since it arose under federal law. However, the court found that its jurisdiction was limited to declaratory relief in a private, as opposed to a government, suit alleging violation of § 14 (a) of the Act. Since the additional equitable relief and damages prayed for by the respondent would, therefore, be available only under state law, it ruled those claims subject to the security for expenses statute. After setting the amount of security at $75,000 and upon the representation of counsel that the security would not be posted, the court dismissed the complaint, save that portion of Count 2 seeking a declaration that the proxy solicitation material was false and misleading and that the proxies and, hence, the merger were void.
 

 II.
 

 It appears clear that private parties have a right under § 27 to bring suit for violation of § 14 (a) of the
 
 *563
 
 Act. Indeed, this section specifically grants the appropriate District Courts jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created” under the Act. The petitioners make no concessions, however, emphasizing that Congress made no specific reference to a private right of action in § 14 (a) that, in any event, the right would not extend to derivative suits and should be limited to prospective relief only. In addition, some of the petitioners argue that the merger can be dissolved only if it was fraudulent or non-beneficial, issues upon which the proxy material would not bear. But the causal relationship of the proxy material and the merger are questions of fact to be resolved at trial, not here. We therefore do not discuss this point further.
 

 III.
 

 While the respondent contends that his Count 2 claim is not a derivative one, we need not embrace that view, for we believe that a right of action exists as to both derivative and direct causes.
 

 The purpose of § 14 (a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation. The section stemmed from the congressional belief that “[f]air corporate suffrage is an important right that should attach to every equity security bought on a public exchange.” H. R. Rep. No. 1383, 73d Cong., 2d Sess., 13. It was intended to “control the conditions under which proxies may be solicited with a view to preventing the recurrence of abuses which . . . [had] frustrated the free exercise of the voting rights of stockholders.”
 
 Id.,
 
 at 14. “Too often proxies are solicited without explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.” S. Rep. No. 792, 73d Cong., 2d Sess., 12. These broad remedial purposes are evidenced in the language of
 
 *564
 
 the section which makes it “unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security . . . registered on any national securities exchange in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest
 
 or for the protection of investors.”
 
 (Italics supplied.) While this language makes no specific reference to a private right of action, among its chief purposes is “the protection of investors,” which certainly Implies the availability of judicial relief where necessary to achieve that result.
 

 The injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon the stockholder. The damage suffered results not from the deceit practiced on him alone but rather from the deceit practiced on the stockholders as a group. To hold that derivative actions are not within the sweep of the section would therefore be tantamount to a denial of private
 
 i
 
 relief. Private enforcement of the proxy rules provides a 1 necessary supplement to Commission action. As in antitrust treble damage litigation, the possibility of civil dam|ages or injunctive relief serves as a most effective weapon fin the enforcement of the proxy requirements. The Commission advises that it examines over 2,000 proxy statements annually and each of them must necessarily be expedited. Time does not permit an independent examination of the facts set out in the proxy material and this results in the Commission’s acceptance of the representations contained therein at their face value, unless contrary to other material on file with it. Indeed, on the allegations of respondent’s complaint, the proxy material failed to disclose alleged unlawful market manipulation of the stock of ATC, and this unlawful manipulation
 
 *565
 
 would not have been apparent to the Commission until after the merger.
 

 We, therefore, believe that under the circumstances")'^ here it is the duty of the courts to be alert to provide | such remedies as are necessary to make effective the con-f gressional purpose. As was said in
 
 Sola Electric Co.
 
 v.
 
 Jefferson Electric Co.,
 
 317 U. S. 173, 176 (1942):
 

 “When a federal statute condemns an act as unlawful, the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted.”
 

 See also
 
 Tunstall
 
 v.
 
 Brotherhood of Locomotive Firemen & Enginemen,
 
 323 U. S. 210, 213 (1944);
 
 Deitrick
 
 v.
 
 Greaney,
 
 309 U. S. 190, 201 (1940). It is for the federal courts “to adjust their remedies so as to grant the necessary relief” where federally secured rights are invaded. “And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.”
 
 Bell
 
 v.
 
 Hood,
 
 327 U. S. 678, 684 (1946). Section 27 grants the District Courts jurisdiction “of all suits in equity and actions at law brought to enforce any liability or duty created by this title . . . .” In passing on almost identical language found in the Securities Act of 1933, the Court found the words entirely sufficient to fashion a remedy to rescind a fraudulent sale, secure restitution and even to enforce the right to restitution against a third party holding assets of the vendor.
 
 Deckert
 
 v.
 
 Independence Shares Corp.,
 
 311 U. S. 282 (1940). This significant language was used:
 

 “The power
 
 to enforce
 
 implies the power to make effective the right of recovery afforded by the Act.
 
 *566
 
 And the power to make the right of recovery effective implies the power to utilize any of the procedures or actions normally available to the litigant according to the exigencies of the particular case.” At 288.
 

 See also
 
 Porter
 
 v.
 
 Warner Holding Co.,
 
 328 U. S. 395 (1946);
 
 Mitchell
 
 v.
 
 Robert DeMario Jewelry, Inc.,
 
 361 U. S. 288 (1960);
 
 Schine Chain Theatres, Inc.,
 
 v.
 
 United States,
 
 334 U. S. 110 (1948).
 

 Nor do we find merit in the contention that such remedies are limited to prospective relief. This was the position taken in
 
 Dann
 
 v.
 
 Studebaker-Packard Corp.,
 
 288 F. 2d 201, where it was held that the “preponderance of questions of state law which would have to be interpreted and applied in order to grant the relief sought ... is so great that the federal question involved ... is really negligible in comparison.” At 214. But we believe that the overriding federal law applicable here would, where the facts required, control the appropriateness of redress despite the provisions of state corporation law, for it “is not uncommon for federal courts to fashion federal law where federal rights are concerned.”
 
 Textile Workers
 
 v.
 
 Lincoln Mills,
 
 353 U. S. 448, 457 (1957). In addition, the fact that questions of state law must be decided does not change the character of the right; it remains federal. As Chief Justice Marshall .said in
 
 Osborn
 
 v.
 
 Bank of the United States,
 
 9 Wheat. 738 (1824):
 

 “If this were sufficient to withdraw a case from the jurisdiction of the federal Courts, almost every case, although involving the construction of a law, would be withdrawn . . . .” At 819-820.
 

 Moreover, if federal jurisdiction were limited to the granting of declaratory relief, victims of deceptive proxy statements would be obliged to go into state courts for remedial relief. And if the law of the State happened
 
 *567
 
 to attach no responsibility to the use of misleading proxy I statements, the whole purpose of the section might be j frustrated. Furthermore, the hurdles that the victim might face (such as separate suits, as contemplated by
 
 Dann
 
 v.
 
 Studebaker-Packard Corp., supra,
 
 security for expenses statutes, bringing in all parties necessary for complete relief, etc.) might well prove insuperable
 
 toj
 
 effective relief.
 

 IV.
 

 Our finding that federal courts have the power to grant all necessary remedial relief is not to be construed as any indication of what we believe to be the necessary and appropriate relief in this case. We are concerned here only with a determination that federal jurisdiction for this purpose does exist. Whatever remedy is necessary must await the trial on the merits.
 

 The other contentions of the petitioners are denied.
 

 Affirmed.
 

 [1]
 

 Section 14 (a) of the Securities Exchange Act of 1934, 48 Stat. 896, 15 U. S. C. § 78n (a), provides: “It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of any national securities exchange or otherwise to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered on any national securities exchange in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.”
 

 [2]
 

 Section 27 of the Act, 48 Stat. 902-903, 15 U. S. C. § 78aa, provides in part: “The district courts of the United States, the Supreme Court of the District of Columbia, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of tins title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to ¡'enforce any liability or duty created by this title or rules and regulations thereunder, or to enjoin any violation of such title or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant jnay be found.”
 

 [3]
 

 “The phrasing of the questions presented need not be identical with that set forth in the jurisdictional statement or the petition for certiorari, but the brief may not raise additional questions or change the substance of the questions already presented in those documents. Questions not presented according to this paragraph will be disregarded, save as the court, at its option, may notice a plain error not presented.”
 

 [4]
 

 17 CFR §240.14a-9 provides:
 
 “False or misleading statements.
 
 No solicitation subject to §§ 240.14a-l to 240.14a-10 shall be made
 
 *562
 
 by means of any proxy statement, form of proxy, notice of meeting, or other communication written or oral containing any statement which at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.”