Joseph A. **ROSIN**, etc., Plaintiffs-Appellants,

v.

The **NEW YORK STOCK EXCHANGE, INC.**, Defendant-Appellee.

Joseph A. **ROSIN**, etc., Plaintiffs-Appellants,

v.

The **AMERICAN STOCK EXCHANGE, INC.**, Defendant-Appellee.

Victor H. **GOULDING**, etc., Plaintiffs-Appellants,

v.

The **MIDWEST STOCK EXCHANGE**, Defendant-Appellee.

Nos. 72-1594, 72-1840, 72-1841.

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1973.

Decided Sept. 6, 1973.

Rehearing Denied Nov. 2, 1973.

———◆———

Harold Z. Kaplan, Chicago, Ill., for plaintiffs-appellants.

Richard M. Keck, Stewart S. Dixon, Chicago, Ill., John J. Loflin, New York City, Milton H. Cohen, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, and MOORE * and FAIRCHILD, Circuit Judges.

MOORE, Circuit Judge (sitting by designation):

Plaintiffs, in three cases, Rosin v. The New York Stock Exchange, Inc. (No. 72–1594), Rosin v. The American Stock Exchange, Inc. (No. 72–1840), and Goulding v. The Midwest Stock Exchange (No. 72–1841), (these cases having been consolidated for purposes of appeal), appeal from orders of the United States District Court for the Northern District of Illinois, William J. Bauer, *Judge*, granting motions for sum-

mary judgment in favor of the defendant stock exchanges and dismissing the separate actions against each exchange. (Mem. Opinion and Order, N.D.Ill., No. 71–C–2085, Apr. 17, 1972 [hereinafter, Mem. Op.]; Order, 71–C–3130, 72–C–17, June 26, 1972). Since the complaints in these cases raise similar issues, specific reference will be made only to the New York Stock Exchange (NYSE) action. This opinion, however, fully applies to the actions against the American Stock Exchange and Midwest Stock Exchange.

### I.

The amended complaint against defendant NYSE alleges in substance that a charge of one five-hundredths of one percent on the aggregate dollar volume of securities transactions on that exchange, which charge is made by the broker-members of the exchanges against the individual customers on each separate sale transaction, is illegal. Plaintiff sues as an individual investor on behalf of himself and on behalf of the alleged Class of all investors who have paid this fee. (Rule 23, F.R.Civ. P.).

Plaintiff's claim and argument are based primarily on Section 31 of the Securities Exchange Act of 1934 (the Act). (15 U.S.C. § 78ee). This section imposes upon every national securities exchange an annual registration fee payable to the Securities and Exchange Commission (the SEC) for the privilege of doing business as such exchange.

The Act provides:

Section 31. Every national securities exchange shall pay to the Commission on or before March 15 of each calendar year a registration fee for the privilege of doing business as a national securities exchange during the preceding calendar year or any part thereof. Such fee shall be in an amount equal to one five-hundredths of 1 per centum of the aggregate dol-

---

* Hon. Leonard P. Moore, Senior United States Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

lar amount of the sales of securities (other than securities which are direct obligations of or obligations guaranteed as to principal or interest by the United States or such securities issued or guaranteed by corporations in which the United States has a direct or an indirect interest as shall be designated for exemption from the provisions of this section by the Secretary of the Treasury) transacted on such national securities exchange during the preceding calendar year and subsequent to its registration as a national securities exchange. 15 U.S.C. § 78ee.

The thrust of plaintiff's argument is that the statute reads: "Every national securities exchange shall pay to the Commission * * * [a registration fee]." Therefore, argues plaintiff, the exchange itself must bear the expense of this fee which it cannot recoup through its broker-members and their customers.

Recoupment is presently accomplished on the NYSE through Exchange Rule 440 under which the Exchange has directed its members to report their sales volume monthly and to pay to the Exchange a sum equal to one cent for each $500 or fraction thereof of the total aggregate dollar sales.[1]

1. New York Stock Exchange Rule 440 provides:

**Books and Records**

Every individual member and every member organization shall make and preserve for at least three years such books and records as the Exchange may prescribe.

Pursuant to this Rule, the Exchange has issued the following directions:

(1) Every member, or member organization engaged in clearing or settling transactions effected upon the Exchange shall maintain a daily record of the aggregate dollar amount of the sales of securities made upon the Exchange and cleared or settled by him or it. The amount of money shall be computed upon the actual sales price, disregarding commissions, taxes or accrued interest on bonds. Blotter dates shall be used throughout. All sales of securities on the Exchange shall be included, except securities which are direct obligations of or obligations guaranteed as to principal or interest by the United States, or such securities issued or guaranteed by corporations in which the United States has a direct or indirect interest as may be designated for exemption therefrom by the Secretary of the Treasury. Odd-lot dealers shall record both the full lots and the odd lots which they sell on the Exchange. If a member organization clears and settles a transaction for a member or member organization that in turn clears it for another principal, only the member organization settling the transactions shall include it in its record. Monthly reports (Form 120-A) of the daily totals above referred to shall be submitted to the Exchange in the manner described below.

(2) At or before 10:30 a. m. on the 10th day of each month each member or member organization required to report shall submit to the Controller's Department a report on Form 120-A showing: aggregate dollar sales volume; the Registration Fee due thereon; principal amount of bonds; number of shares of stock and number of rights to subscribe.

(3) Every such reporting member or member organization shall pay to the Exchange a sum equal to one cent for each $500 or fraction thereof of the total aggregate dollar sales volume reported monthly. The total amount payable as shown on the reports on Form 120-A submitted during the quarter will appear on the next quarterly bill as rendered by the Exchange.

(4) With respect to all transactions which are required by these directions to be included in the foregoing report, the member, firm or corporation responsible for reporting any transaction to the Exchange shall charge to the account, as billed, for which such transaction was made the sum of one cent for each $500 or fraction thereof represented by such transaction.

Whenever the account against which such charge is made is that of a member, member firm or member corporation who is acting for a principal, such member, firm or corporation shall withhold from the sum credited to the account of such principal, as billed, an amount equal to one cent for each $500 or fraction thereof represented by the transaction made for such principal.

(5) In rendering to customers confirmations of sales made on the Exchange for their account, the charge required by these directions ,either shall be shown separately or be treated in the same manner as transfer taxes. In either case the confirmation shall contain an explanatory legend.

(6) Members, firms or corporations that cease the clearing or settling of security transactions shall promptly render reports

Plaintiff also alleges that NYSE Rule 440 violates SEC Rule 10b–5 (17 C.F.R. 240.10b–5) in that this charge operates as a fraud on the customers.

Plaintiff seeks damages on behalf of himself and the Class and an injunction against the NYSE restraining it from continuing the practice of charging to brokers' customers the SEC registration fee specified in Section 31.

## II.

Defendant NYSE moved to dismiss the complaint for failure to state a claim (Rule 12(b)(6), F.R.Civ.P.) and for summary judgment on the ground that there is no genuine issue as to any material fact. (Rule 56, F.R.Civ.P.). The motion was supported by the affidavit of the Secretary of the NYSE with exhibits annexed. From this affidavit there appear the following facts as to which there is no dispute.

On September 11, 1934, the NYSE applied for registration as a national exchange pursuant to Section 6 of the Act. With its application the NYSE submitted copies of its Constitution and Rules.

Prior to this application, on September 6, 1934, the Governing Committee of the NYSE had adopted a resolution providing, upon registration with the SEC, for the payment of the Section 31 fee to the NYSE by the broker-members thereof and that such members "shall charge and collect from the person for whom he was acting in making such transaction the sum of one cent for each $500 or fraction thereof of the dollar

for any interim period resulting from such change, and shall pay promptly any sum due under the above directions.

(7) When sales are made on the Exchange for a customer each item reported in writing to the customer must be separately used as the basis for computing the fee appertaining thereto. If the written report shows as a single item the sale of two or more lots of the same security at the same price on the same day, the fee may be computed upon the total of such lots as a unit; otherwise each sale, whether reported together with others or separately, must be independently made the basis for computing the fee relating thereto.

(8) Members, firms or corporations who settle transactions for other members, firms or corporations and who consequently are required to report sales on the Exchange and pay a fee thereon pursuant to paragraphs 1 and 2 above must charge the account of the member, firm or corporation for whom they act on the same basis as is prescribed above with respect to transactions made for customers. This applies also to firms and corporations carrying accounts of floor traders, specialists, and non-clearing members, firms or corporations both in New York City and elsewhere.

(9) The use of daily, weekly, or any similar totals of transactions made for a particular customer or for a particular account as a basis for computing the fee chargeable to such customer or account, whether member or non-member, is prohibited.

(10) When differences in the computation of the fee arise in good faith, such as when a firm or corporation has rendered to a customer a single report covering two or more lots of the same security at the same price, and because of "give-ups" or otherwise, it is necessary to bill or record the transaction as two or more separate lots, or when similar differences arise between a main office and a branch office, such differences may be adjusted by those involved by mutual agreement.

American Stock Exchange Rule 393 provides: There shall be paid to the Exchange by each member, member firm or member corporation in such manner and at such time as the Treasurer of the Exchange shall direct, the sum of one cent for each $500 or fraction thereof of the dollar volume of the sales upon the Exchange of securities (whether or not cleared by the American Stock Exchange Clearing Corporation) cleared by such member, member firm or member corporation, and any such member, member firm or member corporation required by this rule to pay any sum to the Exchange in respect to any sale upon the Exchange, shall charge and collect from the person for whom he was acting in making such transaction the sum of one cent for each $500 or fraction thereof of the dollar amount involved in such transaction. The monies so paid to the Exchange shall be paid to the Securities and Exchange Commission as the registration fee imposed upon the Exchange by the provisions of the Securities Exchange Act of 1934.

Midwest Stock Exchange Rule 17 provides: Registration Fee Charged the Customer The registration fee under the Securities Exchange Act of 1934 shall be charged the customer.

amount involved in such transaction."[2] In other words, the charge was to be imposed upon the customer. This resolution was apparently not submitted to the SEC with the Exchange's original application for registration as a national securities exchange. Thereafter, in response to an SEC inquiry as to how the NYSE contemplated "collecting the registration fee required by Section 31 of the Securities Exchange Act",[3] the NYSE replied and enclosed a copy of the September 6, 1934 resolution.

Under date of September 28, 1934, the SEC registered the NYSE as a national securities exchange and reserved the privilege of revoking the registration if it should appear to the SEC that "the rules of said exchange in any aspect are not just and adequate to insure fair dealing and to protect investors * * *."[4]

### III.

In ruling on the motion for summary judgment, the District Court first determined that "[t]he material facts presented are uncontroverted." (Mem. Op. at 2). This conclusion is clearly correct; plaintiff bases his claim upon his conception of the legal consequences of Section 31, Rule 440, Section 10(b), and Rule 10b–5, and thus this case is one which may properly be decided by summary judgment.

The Court below then turned to the question of whether there is a private right of action under Section 31 of the Act, *supra*, which would enable this plaintiff on behalf of himself and/or the alleged Class of customers which has paid the aliquot portion of the registration fee assessed against them, to sue the Exchange for recoupment of this charge.

The Court observed that "[t]he language of Section 31 is nothing more than a revenue-raising device" (Mem. Op. at 5); that this section "does not provide for a private right of action" (*Id.* at 4); and that a situation in which such a right might be implied does not exist here. Therefore, the Court concluded, plaintiff has no private right of action for an alleged violation of Section 31.

We agree with this decision of the District Court. There is nothing in Section 31 of the Act relating to broker-members or brokers' customers. If an exchange should fail to pay the required registration fee, the SEC may take whatever action it deems necessary to enforce the statute. No private right of action under Section 31 is vested in any private citizen. *Compare* J. I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964).

### IV.

If plaintiff has any right at all to bring this action, that right must be based upon some allegedly unlawful imposition and collection of the registration fee from the customers. The District Court stated the question thus:

[T]he real question presented here is whether this charge lawfully may be passed on to the customers of members without express statutory authority. Mem. Op. at 5.

Concisely stated, plaintiff's argument is that Section 31 assesses a registration fee against national stock exchanges "for the privilege of doing business." Therefore, he says, "the duty to pay for that privilege is the duty of the NYSE, not the Class" (Complaint, ¶ 17), and the charge may not be passed on to that Class.

In a long and convoluted argument in which he chooses to term the "registration fee" a tax, plaintiff, upon this assumption, claims that, in effect, no pow-

---

2. NYSE resolution of September 6, 1934. (Appendix at 22).

3. A letter from the SEC to the President of the NYSE, dated September 15, 1934, requested a copy of any adopted Rule or an explanation of the procedure.

4. SEC Order, September 28, 1934.

er was given to the Exchange by Congress to "retax" the customers. To build a foundation for his argument plaintiff resorts to such expressions as "excise tax on the stock exchanges", "excise license tax", "privilege tax", "excise privilege tax." (Brief at 26, 30). But as plaintiff concedes (Brief at 29), "The statute [Section 31] is unambiguous." The charge imposed is a registration fee, *simpliciter*; it is not a tax. Therefore, the voluminous quotations from both Senate and House debates which plaintiff sets forth serve only as an interesting reminder of the intersectional views expressed by our equally intersectional Congressional representatives made in the depths of the Depression (*circa* 1929–1939) in an effort by many to attribute our national misfortune to the financial community, principally stock exchanges. The reasons and motives of the individual members of Congress which induced them to vote for a registration fee to be imposed on stock exchanges were merged into the bill as enacted, which is, as plaintiff says, "unambiguous." (*Id.*)

Equally irrelevant are plaintiff's arguments and cases based upon his "retax" theory. There is no "tax" and there is, therefore, no attempt on the part of the NYSE to effect a "retax."

■ It is unnecessary for our decision here that we accept the District Court's conclusion that this case presents "a classic example of an excise tax." (Mem. Op. at 6). Nor is it necessary, in view of our conclusion that Section 31 imposes no tax, that we determine whether such a "tax may be passed on to customers in the absence of express statutory authority." (*Id.* at 5). Finally, for the same reason, we need not consider whether this charge is authorized, as defendants urge, as included under "other charges" in Section 19(b)(9) of the Act. The District Court's decision that regardless of whether Section 31 imposes "a tax or a

fee," it may be passed on indirectly or, as here, directly, is clearly correct. (Lash's Prods. Co. v. United States, 278 U.S. 175, 176, 49 S.Ct. 100, 73 L.Ed. 251 (1929)).

## V.

Plaintiff also argues that defendant's rules violate SEC Rule 10b–5. This argument is based upon two theories: (1) that investors are given nothing in return for the registration fee charge; and (2) that the method of computing the charge, in effect, results in unjust enrichment of the broker-members. (Plaintiff alleges that because customers must pay on each sale of stock a fee of $0.01 for each $500 *or fraction* thereof, excess fees totaling $300,000 were collected between 1967 and 1970).

As the District Court noted: "[I]t would be virtually impossible to collect an amount identical to that of the Exchange's registration fee * * *" (Mem. Op. at 15), and that there is "no feasible alternative to the present procedure * * *." "Since all brokers' billing is handled on a per-transaction basis, it would be economically impractical, if not virtually impossible, to aggregate a customer's transactions over an extended period in order to lessen the amount of the over-collection by a few pennies per customer." (Mem. Op. at 16).

■ The facts clearly rebut any cause of action under Section 10(b) or Rule 10b–5. There was no fraud or misrepresentation in connection with the sale of securities. To the contrary, the charges made on each transaction are itemized and openly disclosed on the customer's confirmation slips.

To insure equal treatment of customers the NYSE imposes a uniform method of collecting the registration fee. Because the trading of customers varies from accounts having only a single isolated transaction to active trading ac-

counts, the NYSE has enacted Rule 369 [5] which prevents individual broker-members from giving preferential treatment to customers, either by the assumption of the registration fee charges or by resort to different methods of calculation.

The method of collecting the Section 31 registration fee adopted by the NYSE does not come within any proscription of the statute, the rules relating to fraud, or the intendment thereof. Plaintiff's frequent interspersing of the word "fraudulent" does not obscure the language thereof.

### VI.

■ Brief comment must be made regarding plaintiff's attempt to seek discovery from the SEC, the American Stock Exchange, and the Midwest Stock Exchange. This discovery was sought after the District Court had entered its Memorandum Opinion and Order in the action against the NYSE and had indicated that it intended to dispose of the American and Midwest actions in similar fashion.

By such discovery plaintiff asserts that he had hoped to establish "material facts to dispute those invented by the Court in order to arm [himself] to defend against defendants' motions for summary judgment." (Brief at 73). In the first place, courts do not "invent" material facts: they pass upon such relevant and material facts as counsel properly present. Secondly, we are dealing not with "court-made facts", "erroneous facts dehors the record" or the "court's own invented 'facts'" (Brief at 69, 73), but with statutes and rules and plaintiff-made distortion thereof.

No deposition of the SEC or of the defendants can alter the few material facts necessary to decision here. The Court did not invoke "judicial magic" (Brief at 77) to find no substance in plaintiff's groundless, although ingenious, theories. Such alchemy as there may be results from plaintiff's efforts to turn a registration fee into a tax.

The motions for summary judgment in favor of defendants were properly granted.

Orders affirmed.

5. New York Stock Exchange Rule 369 provides:

  Prohibited Arrangements, etc.
  While not in any way limiting the meaning or effect of Section 1, Article XV of the Constitution, prohibiting rebates of commission, a member, allied member or member organization may not make any of the following arrangements, agreements or payments:

\*     \*     \*     \*     \*

(3) The assumption, by agreement or otherwise, of any part of

\*     \*     \*     \*     \*

(B) any charge upon the sale of securities upon the exchange because of the registration fee imposed upon national securities exchanges by the Securities Act of 1934;