Thomas L. DAVIS et al., Plaintiffs,

v.

EMERSON INSURANCE AGENCY, INC., a corporation, et al., Defendants.

Civ. No. 76–0–453.

United States District Court, D. Nebraska.

Dec. 9, 1976.

Steven R. Bloch, Omaha, Neb., for plaintiff, Thomas L. Davis.

Virgil J. Haggart, Omaha, Neb., for plaintiff, Carol Davis Wells.

William E. Morrow, Jr., Omaha, Neb., for defendants, Emerson Ins., Farmers & Merchants Co., Blair Ins. Agency, John R. Lauritzen, Bruce R. Lauritzen, Ann Lauritzen Pape.

John E. North, Omaha, Neb., for defendant, First National Bank.

## MEMORANDUM AND ORDER

DENNEY, District Judge.

This matter is before the Court for the purposes of setting forth findings of facts and conclusions of law in accordance with Rule 52(a), Fed.R.Civ.P., subsequent to entry of a temporary restraining order.

This is an action for injunctive relief arising out of claimed violations of Sections 10(b), 14(d), 14(e) and 20(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78j(b), 78n(d) and (e) and 78t(a) and Rule 10b–5 and Rule 14d, 17 C.F.R. § 240.10b–5 and § 240.14d, promulgated under the 1934 Act, and common law.

Plaintiff's verified complaint reveals the following allegations of material facts. Plaintiffs, Thomas L. Davis and Carol Davis Wells, are legal and equitable owners of approximately 19.9% of the outstanding stock of First National of Nebraska, Inc. [the Company]; First National of Nebraska is a bank holding company which owns substantially all of the outstanding stock in defendant, The First National Bank of Omaha [the Bank]. Defendants, John R. Lauritzen, Bruce R. Lauritzen, Ann Lauritzen Pape, Emerson Insurance Agency, Inc. [Emerson], Farmers and Merchants Company of Bloomfield, Inc. [Bloomfield] and Blair Insurance Agency, Inc. [Blair] are controlling persons of the Company.

On November 26, 1976, Emerson, Bloomfield and Blair, which are owned or controlled by defendant, John R. Lauritzen, and his family, delivered to the stockholders of the Company through defendant, Loewi & Co., Inc., a tender offer for outstanding common stock of the Company.

■ Although plaintiffs' complaint consists of five counts,[1] the Court's primary concern at this preliminary stage of the litigation is with Count III, arising under Section 14(d) of the 1934 Act and Rule 14d–1. Plaintiffs allege as follows: (1) That the offerors violated Section 14(d)(1) and Rule 14d–1 by not filing a Schedule 13D with the Securities Exchange Commission; however, the controlling persons did file a schedule, but after the final copies of the offer were first sent to shareholders; (2) that the terms of the offer providing that the tender offer may be withdrawn

1. Count I alleges breach of fiduciary duty by the Bank, as trustee and executor for plaintiffs as beneficiaries, in providing funds for the acquisition of stock. Plaintiffs' bare conclusory allegations that the tenders will destroy the value of the stock is insufficient to support a restraining order.

Count IV alleges omissions of material facts under Section 14(e). However, most if not all of the allegations concern facts which would seem to be readily available to the offerees. Counts II and V arise under Section 10(b) of the 1934 Act and Rule 10b–5 which would not appear to cover tender offers except as the law is incorporated in Sections 14(d) and (e). See H.Rep. No. 1711, 90th Cong. 2d Sess., p. 3 (July 12, 1968), U.S.Code Cong. & Admin.News 1968, p. 2998.

**563**

until December 3, 1976, and thereafter may not be withdrawn until February 1, 1977, is in violation of 14(d)(5); (3) that the tender offer materials fail to state the business addresses of persons who filed the Schedule 13D in violation of Rule 14d–1(c)(4).

■ The settled rule is that a temporary restraining order may only issue if the plaintiffs has shown (1) substantial probability of success at trial, and (2) irreparable injury to the moving party absent the issuance of an injunction. *Missouri Portland Cement Co. v. H. K. Porter Co., Inc.*, 535 F.2d 388, 392 (8th Cir. 1976). From the foregoing recitation of facts in plaintiffs' verified complaint, it would appear that if properly proven at a trial on the merits, defendants may well be in violation of the Williams Act.

The possibility of irreparable injury, however, is not without substantial difficulty. This traditional requirement is difficult to define:

Recitation of this term generally produces more dust than light. A plaintiff asking an injunction because of the defendant's violation of a statute is not required to show that otherwise rigor mortis will set in forthwith; all that "irreparable injury" means in this context is that unless an injunction is granted, the plaintiff will suffer harm which cannot be repaired. At least that is enough where, as here, the only consequence of an injunction is that the defendant must effect a compliance with the statute which he ought to have done before. *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 698 (2nd Cir. 1966).

In *J. I. Case Co. v. Borak*, 377 U.S. 426, 432, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964), the Supreme Court held that "[p]rivate enforcement of the proxy rules provides a necessary supplement to Commission action. As in anti-trust treble damage litigation, the possibility of civil damages or injunctive relief serves as a most effective weapon in the enforcement of the proxy requirements." It is also "well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946).

Nor has the Supreme Court foreclosed injunctive relief in *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975), as defendants apparently contend. The Court noted therein that

[b]ecause this case involves only the availability of injunctive relief to remedy a § 13(d) violation *following compliance with the reporting requirements,* it does not require us to decide whether or under what circumstances a corporation could obtain a decree enjoining a shareholder who is currently in violation of § 13(d) from acquiring further shares, exercising voting rights, or launching a takeover bid, pending compliance with the reporting requirements. *Id.* at 59, n. 9, 95 S.Ct. at 2076. (Emphasis supplied).

*Merrit v. Libby, McNeill & Libby,* 533 F.2d 1310 (2nd Cir. 1976), wherein the Second Circuit, in affirming the district court's denial of a preliminary injunction against a short-form merger, held that plaintiffs possessed an adequate remedy at law, is distinguishable. The appellants in *Merrit* did not seek timely injunctive relief to enjoin the tender offer but simply "stood by and let them spend the cash that brought them to 92% stock ownership . . .." *Id.* at 1314.

■ The irreparable injury alleged by plaintiffs is that the tender offer may result in reducing the number of shareholders to the point that the stock may be deregistered with the Securities and Exchange Commission, as stated in the tender offer. In the Court's opinion, the degree of injury required should be linked to the type of relief granted, and less serious injury should be necessary to compel distribution of curative material which will allow the offer to proceed. As Judge Friendly stated in *Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937, 947 (2nd Cir. 1969):

We agree with plaintiffs to the extent of believing that the application for a pre-

liminary injunction is the time when relief can best be given. Despite the makeweight argument in the final paragraph of *Symington Wayne [Corp. v. Dresser Industries, Inc.], supra* [2 Cir.], 383 F.2d [840] at 843, on which Judge McLean naturally relied, we think that in administering § 14(d) and (e), district judges would do well to ponder whether, if a violation has been sufficiently proved on an application for a temporary injunction, the opportunity for doing equity is not considerably better then than it will be later on. The court will have a variety of tools usable at that stage. If the filings are defective or the tender offer misleading, the court can require correction, along, of course, with an opportunity to withdraw and an injunction against further solicitation until the period for withdrawal has expired.

Although the Court is cognizant of the fact that a temporary restraining order is a drastic remedy and tender offers should not be lightly interfered with, the offer will expire on December 13, 1976, and the plaintiffs may be irreparably harmed unless defendants are temporarily restrained. Prompt and judicious consideration requires that the status quo be maintained pending a plenary evidentiary hearing upon plaintiffs' request for a preliminary injunction.

IT IS SO ORDERED.