Louise Price PARSONS, Plaintiff,

v.

JEFFERSON–PILOT CORPORATION, Thomas M. Belk, William E. Blackwell, Edwin B. Borden, William H. Cunningham, Jerry L. Eagle, Thomas Fee, C. Randolph Ferguson, Robert G. Greer, Charles E. Hayworth, A. Linwood Holton, Jr., John C. Ingram, John K. Jones, Robert H. Koonts, Curtis R. Lashley, Levi P. Maupin, Jr., E.S. Melvin, Charles W. McCoy, Albert G. Myers, Jr., Donald S. Russell, Jr., W. Roger Soles, Callie C. Spiller, Jr., Robert H. Spilman, Louis C. Stephens, Jr., John T. Still, III, Martha A. Walls, and John T. Warmath, Jr., Defendants.

No. 2:91CV00372.

United States District Court, M.D. North Carolina, Greensboro Division.

April 10, 1992.

**698**

Stern, Graham & Klepfer by James W. Miles, Jr. and William Albert Eagles Greensboro, N.C., Richard M. Kirby and Michael J. McConnell, Atlanta, Ga., for plaintiff.

Smith, Helms, Mullis & Moore by Larry B. Sitton, Peter James Covington, and Bradley R. Kutrow, Greensboro, N.C., for defendants.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

This matter is before the court upon plaintiff Louise Price Parson's motion for partial summary judgment. The plaintiff filed a brief in support of this motion, and the defendants filed the appropriate response. Oral arguments were heard in this matter, and the court is now ready for a ruling.

The court GRANTS the plaintiff's motion for partial summary judgment and contemporaneously issues a judgment for the plaintiff on her claim against the defendants for violation of Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a–9 of the Securities Exchange Commission. The accompanying judgment supersedes the judgment of this court entered on March 31, 1992. All motions entered by either party after March 31, 1992 are hereby DENIED in light of this opinion.

## STATEMENT OF THE FACTS

### Nature of the Case

The above-entitled matter is an alleged proxy fraud dispute between Jefferson–Pilot Corporation and one of its shareholders, Louise Price Parsons. The dispute arises out of a 1990 Proxy Statement issued by the Board of Directors of Jefferson–Pilot Corporation.

The sole issue to be considered at this time is whether the representations contained in the 1990 proxy materials were materially false and misleading, in violation of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n (West 1982), and Rule 14a–9 of the Securities Exchange Commission (SEC), 17 C.F.R. 240.14a–9 (U.S. Gov't Printing Office, 1991).

The purpose of Section 14(a) is to prevent management and others from obtaining authorization for corporate action by means of deceptive or inadequate disclosures in proxy solicitation. *J.I. Case Co. v. Borak,* 377 U.S. 426, 431–32, 84 S.Ct. 1555, 1559–60, 12 L.Ed.2d 423 (1964). Section 14(a) stemmed from the congressional belief that fair corporate suffrage is an important right that should attach to every equity

security bought on the public exchange. *Id.*

### Procedural History

Plaintiff filed this lawsuit on July 25, 1991 in the Middle District of North Carolina against Jefferson–Pilot Corporation. On January 24, 1992, the complaint was amended to join those individuals who received stock grants from the company via a 1990 amendment.

The complaint seeks in part recision of the 1990 amendment to a stock option plan which was voted on and approved by stockholders of Jefferson–Pilot Corporation. The amendment awarded stock grants to certain employees and officers of the corporation. Plaintiff seeks relief under Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a–9 of the Securities Exchange Commission.

A motion for partial summary judgment was filed on March 3, 1992 by the plaintiff. Defendants moved to stay or to defer ruling on the plaintiff's motion for partial summary judgment until after the Jefferson–Pilot Board of Director's meeting on May 4, 1992. The defendants contend that by deferring the ruling, any alleged improprieties in the 1990 amendment would be rendered moot via ratification of the amendment at the 1992 board meeting.

The motion to stay was denied, and defendants submitted a brief in opposition to the plaintiff's motion. Oral arguments were heard on March 31, 1992. At that time, the court ruled in favor of the plaintiff and temporarily enjoined defendants from any voting, transfer, disposition, pledge, hypothecation, or sale of stock issued via the 1990 amendment. At that time, the court instructed the parties that a formal judgment would follow in due course which would clearly articulate the appropriate relief and rescind the earlier judgment.

### Factual Summary

Plaintiff Louise Price Parsons, a stockholder in Jefferson–Pilot Corporation, received approximately 290,000 shares of Jefferson–Pilot stock from her grandmother's trust when her father died in 1989. In 1990, Parsons purchased another 10,000 shares of Jefferson–Pilot stock, bringing her total share allotment to 300,000 shares.

Jefferson–Pilot is a public company traded on the New York Stock Exchange, with more than 34,000,000 shares owned by over 10,000 individuals and institutions. Jefferson–Pilot is governed by a twenty member Board of Directors. W. Roger Soles is the president, chairman, and chief executive officer of Jefferson–Pilot. Soles has served in this capacity for over twenty years.

The events which led to this suit commenced on May 1, 1989. At the annual meeting of Jefferson–Pilot shareholders, the shareholders approved a Stock Option Plan (hereinafter the plan) which gave the Compensation Committee of the Board of Directors power to grant stock options and stock appreciation rights to employees and officers of Jefferson–Pilot. The plan allocated a maximum of 1,200,000 shares of Jefferson–Pilot's stock for issuance under the plan.

The Compensation Committee met on April 30, 1989, the day before the Board of Director's meeting. Although the plan had not been approved by the shareholders, the Compensation Committee, in anticipation of approval of the plan by the shareholders the following day, recommended stock options to certain employees and officers of Jefferson–Pilot for consideration to receive the stock grants. Stock option awards were approved by the Compensation Committee for all of the key employees and officers of Jefferson–Pilot with the exception of W. Roger Soles.

After considerable discussion, the Compensation Committee investigated the likelihood of an award to Soles. Because stock options were limited under the plan to a value no greater than $100,000 per year, the Compensation Committee felt that additional flexibility was needed to provide incentives and to reward key employees.

An in-house Jefferson–Pilot attorney was asked to prepare an amendment to the plan. The amendment would give the Compensation Committee the ability to make stock grants without increasing the number of shares available for issuance under

the plan. The board was asked to consider the amendment at the February 1990 meeting. The purpose of the amendment was to serve as an incentive to enhance future performance of key employees.

Before the amendment was presented to the board, Soles suggested that the amendment be changed to include a provision for a one-time grant of 1,500 shares of stock to each of the company's non-employee directors. Soles' idea was incorporated into the amendment.

The amendment approved by the board at its February 1990 meeting provided as follows with regard to grants to officers: The Compensation Committee may make stock grants to selected officers of the corporation and its subsidiaries to enable such officers to acquire stock on such terms and conditions as the Compensation Committee determines are in the best interest of the corporation.

The amendment was to be sent out along with the 1990 Notice of Annual Meeting and Proxy Statement. The proxy statement described the amendment to the shareholders. Jerry Eagle, a senior member of Jefferson–Pilot's legal staff, prepared the proxy materials, including that portion of the statement that dealt with the amendment.

In describing the stock grants that were to be issued under the amendment, Eagle categorized the stock as being restricted stock, although the language of the amendment gave unbridled discretion to the board in deciding the terms and conditions of the stock. The directors each received a draft of the 1990 Proxy Statement before it was mailed to the shareholders on April 13, 1990. The proxy statement categorizing the stock grants as restricted was accepted by the Board of Directors, and the proxy was sent out to the shareholders.

1. This chart represents the total stock awards granted over a two-year period. The actual awards made in the 1990 grant of stock were:
   50,000 Shares
   4,000 Shares
   4,000 Shares
   4,000 Shares
   4,000 Shares

Shareholder proxies are returned to and retained by First Union National Bank until they are exercised at the annual meeting. However, First Union provides a daily count of the proxy votes to Jefferson–Pilot during the time leading up to the annual meeting.

Based on the daily count, the Board of Directors was aware that an overwhelming majority of the proxies received by First Union were in favor of the amendment. The Compensation Committee then delegated the 116,000 shares of stock effective May 6, 1990 as follows:

| Office | No. of Shares |
|---|---|
| Chairman of the Board and President | 50,000 |
| Executive Vice President | 12,000 |
| Senior Vice President and Treasurer | 12,000 |
| Senior Vice President | 12,000 |
| Senior Vice President and General Counsel | 12,000 |
| Senior Vice President | 12,000 |
| Executive Vice President Jefferson–Pilot Life Ins. Co. | 6,000 |

These grants were subject to the following terms and conditions:

A. With respect to the grant of 50,000 shares to the chairman of the board, the Compensation Committee determined that all of such shares would vest May 6, 1990 with the value per share of all such 50,000 shares to be the same as the closing price per share as of Friday, May 4, 1990, of the corporation's stock on the New York Stock Exchange; and

B. With respect to the grant of the remaining 66,000 shares to the other officers, the Compensation Committee determined that such shares would vest as follows:

(i)   $\frac{1}{3}$ on May 6, 1990;

(ii)  $\frac{1}{3}$ on May 6, 1991;

(iii) $\frac{1}{3}$ on May 6, 1992.[1]

   4,000 Shares
   2,000 Shares
   72,000 total Shares
   The board voted to grant 100,000 shares of stock over a two-year period to the chairman of the board. The chairman received 50,000 shares in 1990 and another 50,000 shares the next year.

On May 7, 1990, the shareholders of Jefferson–Pilot met and voted to approve the amendment to the plan with more than eighty-seven percent of the shareholders voting in favor of the amendment. The amendment granted stock issuance to the seven directors and twelve non-employee directors. The non-employee directors were each granted 1,500 shares of stock.

Upon receipt of the stock grants, each of the company's officers and directors is required to file a "Form 4" with the SEC disclosing their stock grants. The Form 4 is a matter of public record.

Mr. Jerry Eagle was given the task of preparing the Form 4's to be sent to the Securities Exchange Commission. Mr. Eagle prepared these forms and characterized the stock grants to each of the directors or officers as restricted stock. After completion of the form to the Securities Exchange Commission, the forms were signed by each of the stock grant recipients. Their signatures verified to the Securities Exchange Commission as a matter of public record, that the stock received was restricted.

In May 1991 at the annual meeting of the shareholders, plaintiff Parsons asked the chairman of the board unequivocally whether the restricted stock he and others received had any restrictions on it. The chairman informed the plaintiff that the stock had absolutely no restrictions attached. Based on his response, plaintiff filed this lawsuit.

## LEGAL DISCUSSION

### Jurisdiction

Private parties have a right to bring suit for violation of Section 14(a) of the Securities Exchange Act. Section 27 of the Act specifically grants the appropriate district courts jurisdiction over all suits in equity and actions at law brought to enforce any liability or duty created under the Act. *J.I. Case Co. v. Borax*, 377 U.S. 426, 428, 84 S.Ct. 1555, 1558, 12 L.Ed.2d 423 (1964).

■ In the present case, plaintiff Parsons is a private party who has a right by reason of her status as a shareholder to bring this action in the federal court. It is well settled that an implied private right of action exists under Section 14(a) and under Rule 14a–9. Hence, plaintiff Parsons has standing to bring this action.

### The 14a–9 Test

The sole issue for consideration in this proxy dispute is whether the 1990 Proxy Statement violated Section 14(a) of the Securities Exchange Act and Rule 14a–9. The plaintiff waived her right to a jury trial and requested a bench trial on the issues presented. Hence, the judge is the trier of fact in this action.

Section 14(a) of the Securities Exchange Act of 1934 provides:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of any national securities exchange or otherwise to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered on any national securities exchange in contravention of such rules and regulations as the (Securities and Exchange) Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

17 C.F.R. § 240.14a–9 (U.S. Gov't Printing Office 1991).

■ A shareholder establishes a violation of Rule 14a–9, which is promulgated under Section 14(a) of the Securities Exchange Act by establishing: (1) the proxy statement contains a material misrepresentation or omission; (2) the defendants were negligent; and (3) the proxy was the essential link in completing the transaction in question. *Fradkin v. Ernst*, 571 F.Supp. 829, 842–43 (N.D.Ohio 1983). The court will take each prong of the 14a–9 test in turn.

### Materiality

■ The test for determining the materiality of an omission or a misstatement is whether there is a substantial likelihood

that a reasonable shareholder would consider it important in deciding how to vote. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 439, 96 S.Ct. 2126, 2127–28, 48 L.Ed.2d 757 (1976). Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available. *Id.*

■ When assessing what a reasonable shareholder would deem important, the nature, purpose, value, and recipients of the stock grants are all important factors to be considered. *Id.* at 449, 96 S.Ct. at 2132. If an omission or misstatement of one of these elements is made, the omission or misstatement is deemed material as a matter of law.

■ The misstatement which is the focus of this action turns on the use of the term "restricted" when referring to stock grants made to shareholders via a 1990 amendment. The type of stock to be granted is important in order for a shareholder to determine the nature and value of the stock being awarded.

Stock that vests over time, or restricted stock, enables a company to retain key employees by requiring that the key employee's interest in such stock vests only if the employee remains with the company. A literal definition of restricted stock is stock to which is attached restrictions as to transferability. *Black's Law Dictionary* 1271 (5th ed. 1979).

Unrestricted stock, on the other hand, vests immediately. Unrestricted stock is not subject to forfeiture and can be turned into money immediately. Unlike restricted stock, a key employee has little incentive for remaining with the company because unrestricted stock vests immediately.

When analyzing the purpose of the amendment, it is clear that restricted stock grants would have best served the ultimate goals of the stock issuances. The 1990 Proxy Statement represented to the shareholders that the purpose of the amendment was to serve as an enhancement for *future* performance of key employees. The grant

of restricted stock would best serve this purpose; yet the stock grants were awarded with no restrictions whatsoever. In other words, an employee had little incentive to remain with the company since the stock vested immediately. Hence, the purpose and the grant of unrestricted stock do not logically accompany one another and must be deemed a material misrepresentation by the Board of Directors.

Yet another inference of misrepresentation can be drawn from the fact that unrestricted stock can be turned into money upon receipt. Unrestricted stock has considerably more economic value than restricted stock. Unrestricted stock may be sold immediately for cash. Since the stock issued to key employees was labeled as restricted stock, the 1990 Proxy Statement misrepresented the stock's true value.

In *Fradkin v. Ernst*, 571 F.Supp. 829 (N.D.Ohio 1983), the court held that failure in a proxy statement to disclose that certain officers would receive millions of dollars was an omission of material information. Similarly, in *Halpern v. Armstrong*, 491 F.Supp. 365, 368 (S.D.N.Y.1980), the court held that a proxy statement which purported to clarify a plan that in fact amended the plan to add 800,000 shares of stock to the plan was false and misleading.

Comparing this case to other documented cases of misrepresentation, an inference can be drawn that the Jefferson–Pilot shareholders were misrepresented. The fact that the true stock value was disguised is adequate ground for misrepresentation as a matter of law.

Defendants argue that the issue of materiality is inappropriate for summary judgment because it involves a mixed question of law and fact. Defendants further contend that the inferences necessary to find materiality cannot be decided by a judge, and that only a reasonable shareholder could determine if the misstatement would have made a difference in his or her vote. Accordingly, materiality is not ripe for adjudication by this court.

The defendants' argument is sorely undercut by the decision of the United States Court of Appeals for the Fifth Circuit in *In*

*re Placid Oil Co.,* 932 F.2d 394 (5th Cir. 1991). The appeals court affirmed the district court's grant of summary judgment in a non-jury case where the district court's decision depended on inferences to be drawn from undisputed facts.

In the case *sub judice,* inferences must be drawn from undisputed facts. Applying the reasoning of the United States Court of Appeals for the Fifth Circuit: "(I)t makes little sense to forbid the judge from drawing inferences from the evidence ... unless those inferences involve issues of witness credibility or disputed material facts." *Id.* at 398.

The credibility of the shareholders is not at issue, neither are there disputed material facts. All parties agree that the stock issued was unrestricted stock. To drag shareholder after shareholder into court would be a gross waste of time and money to all parties. This is particularly unnecessary when the inferences are so strong as they are in this case. Accordingly, as a matter of law, the court finds that the 1990 amendment was a material misstatement as to the nature and value of the stock granted to key employees by categorizing the stock as restricted when indeed the stock was granted with no restrictions.

*Negligence*

■ The standard under Rule 14a–9's second prong is one of negligence. The plaintiff must show that the corporate issuer negligently drafted the proxy statement. *Wilson v. Great Am. Indus., Inc.,* 855 F.2d 987, 995 (2d Cir.1988). Upon a proper showing that the proxy statement was prepared by corporate insiders containing materially false or misleading statements, negligence is found as a matter of law. *Id.*

■ The plaintiff need not establish that the corporate issuer intended to deceive the shareholders or that the shareholder acted recklessly. *Gerstle v. Gamble–Skogmo, Inc.,* 478 F.2d 1281, 1300–01 (2d Cir.1973). This rule is often referred to as the *Gerstle* negligence standard.

■ Defendants categorize the use of the term "restricted" in the proxy state-ment as a mistake. According to the defendant, the use of the term was merely an oversight which had no impact on the shareholders' decision to approve the amendment. The drafter of the proxy statement merely assumed that the stock was restricted. In drafting the statement, proxy statements from other companies were reviewed. Since the word "restricted" was used in the other statements, the drafter of the Jefferson–Pilot proxy assumed that the stock would also be restricted stock.

The statement in the case at bar was prepared by corporate insiders, namely Mr. Jerry Eagle. The statement contained numerous materially false and misleading statements. The proxy statement made reference to restricted stock grants not one but ten times. Hence, under the *Gerstle* negligence standard, negligence can be found as a matter of law.

To further support this finding, Mr. Eagle admits that he never read the amendment before drafting the proxy statement. This omission, in and of itself, is enough to find negligent conduct by the defendants. Mr. Eagle failed to investigate the truth of the proxy statement he ultimately sent out to the shareholders.

Finally, Mr. Eagle was not an inexperienced attorney assigned the task of preparing a proxy statement. Mr. Eagle holds a senior position in the Jefferson–Pilot legal department and has years of experience in this area of the law. Accordingly, his conduct can only be described as negligent. Hence, as a matter of law, the plaintiff has established the second prong under the 14a–9 analysis.

Mr. Eagle is not the only negligent party in this action. Each of the directors who reviewed the proxy statement is equally as negligent for failing to notice the use of the word "restricted" ten times in the document. Additionally, the parties responsible for filing the appropriate SEC forms are equally guilty of negligence in the performance of their duties.

*Causation*

The next and final prong under the 14a–9 analysis is that of causation. The test for determining causation is set forth in *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970).

> Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials was an essential link in the accomplishment of the transaction.

This test is commonly referred to as the *Mills* essential link test.

■ The *Mills* essential link test is met as a matter of law if the proxy statement is materially false and misleading. Under Rule 14a–9, the shareholder need not establish that she individually relied on the materially false and misleading proxy statement. *Sandberg v. Virginia Bankshares, Inc.*, 891 F.2d 1112, 1119 (4th Cir.1989), *rev'd on other grounds, Virginia Bankshares, Inc. v. Sandberg,* —— U.S. ——, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991).

■ In the case at bar, the amendment required shareholder approval. The board conditioned the implementation of the amendment upon the approval of a majority of the shareholders. Hence, the grants made on May 6, 1990 were made subject to shareholder approval and prove that the proxy solicitation itself was an essential link. Accordingly, since the proxy statement contained a material misrepresentation, the causation requirement is met. *Fradkin v. Ernst*, 571 F.Supp. 829, 842 (N.D.Ohio 1983).

Jefferson–Pilot used a materially false and misleading 1990 Proxy Statement to secure shareholder approval which was required by the amendment. Applying the *Mills* essential link analysis, causation has been proven as a matter of law. Accordingly, all three prongs of the 14a–9 prima facie case have been met by the plaintiff. The court now turns to the appropriate relief in this case.

*Relief*

On March 31, 1992, the court issued a judgment in which the defendants were enjoined from certain actions related to the 1990 award of stock.[2] The action taken by the court at that time was merely instituted to prevent any misuse of stock that was issued in violation of Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a–9 pending a memorandum opinion and judgment by the court.

■ The customary remedy for a violation of Section 14(a) and Rule 14a–9 is a decree nullifying the corporate action taken on the basis of management's proxies. *Edelman v. Salomon*, 559 F.Supp. 1178, 1184 (D.Del.1983). In the instant case, although the entire proxy statement may have been misleading, the court's ruling will not have any effect on the proxies cast in favor of the election of directors at the 1990 Annual Meeting of Shareholders.

The relief granted to plaintiff will only affect the stock grants made to key employees. All stock grant recipients are parties to this action. Accordingly, the court hereby rescinds the amendment and declares all stock grants made thereunder to be null and void. Additionally, all proxies cast in favor of the amendment of Jefferson–Pilot Corporation are hereby declared null and void.

Naturally, the court's relief cannot cover any stock that has been sold, transferred, or otherwise disposed of by the parties. The court's relief also does not lend guidance to tax consequences this relief may create. Such matters are best left to be decided by those affected.

---

**2.** It should be noted that since the court finds that the 1990 Proxy Statement was materially false and misleading in violation of Section 14(a) and Rule 14a–9, any subsequent awards made pursuant to that amendment and proxy statement are likewise in violation of this section of the Act. Hence, any relief proscribed pertaining to the 1990 amendment automatically is applied to any future stock grants made pursuant to that amendment.

## CONCLUSION

In light of the foregoing, the court hereby GRANTS plaintiff's motion for partial summary judgment. A Judgment in accordance with this Memorandum Opinion will be filed contemporaneously herewith.