**HUMANA, INC., Plaintiff,**

v.

**AMERICAN MEDICORP, INC., Defendant.**

**No. 77 Civ. 4809.**

United States District Court, S. D. New York.

Dec. 28, 1977.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for plaintiff; Milton R. Ackman, New York City, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant; Michael H. Diamond, Robert E. Zimet, New York City, of counsel.

LASKER, District Judge.

On September 27, 1977, Humana advised Medicorp by letter that it intended to make an offer to acquire up to 75% of the outstanding shares of Medicorp on the basis of an exchange of cash and securities. The offer constituted a clear premium over the then market price of Medicorp stock. Very shortly after receipt of Humana's letter the Medicorp Board of Directors resolved that the offer was not advantageous to its stockholders and informed them to this effect. There has followed a spate of litigation including this action alleging that Medicorp has made material misrepresentations concerning the offer in violation of § 14(e) of the 1934 Securities and Exchange Act (the "Williams Act") and in which Medicorp has counterclaimed alleging violations of the same statute by Humana.

On September 30, 1977, Humana filed with the Securities & Exchange Commission a registration statement relating to the preferred stock it intended to issue as part of its tender offer. That registration statement became effective December 22, 1977. Immediately thereafter Humana formally issued its offer to Medicorp stockholders which will expire January 10, 1978, unless extended.

On December 21, 1977, Trans World Airways (TWA) and its wholly owned subsidiary, Hilton International Co. (Hilton), announced a competing partial tender offer which also will expire January 10, 1978, unless extended. The proposal consists of an offer to purchase 64% of the outstanding shares of Medicorp stock for $20. per share. TWA's announcement of the competing offer adds, however, that if the competing offer is successful, it is the intention of TWA and Hilton to acquire the remaining shares of Medicorp in exchange for equity securities of TWA or Hilton or an affiliate plus cash which is said to have an anticipated "value" of $20. per share.

On December 27, 1977, Humana moved by Order to Show Cause to file a second amended and supplemental complaint to its action against Medicorp to add TWA and Hilton as defendants; to state new causes of action relating to the TWA–Hilton competitive offer; and to request injunctive relief against TWA and Hilton. Because of the urgency of the situation, extensive treatment of the question has not been possible. This decision is being delivered on the record and will be amplified hereafter if it appears necessary.

Medicorp opposes the motion on the grounds that Humana does not have standing to sue for violations of the Williams Act by a competing offeror. Its principal reliance is placed on *Piper v. Chris-Craft Industries,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), and it also refers to the decision of Judge Ward in *Crane Co. v. American Standard Inc.,* D.C., 439 F.Supp. 945 (1977).

*Piper* shattered the nearly universal holdings of lower courts that competing tender offerors had standing to sue each other for damages under the Williams Act. (15 U.S.C. §§ 78n(d) and (e)). In *Piper,* Chris Craft, a losing tender offeror in a consummated tender offer battle, sued both its competing tender offeror and target management for damages, claiming violations of the Williams Act in connection with the tender offer battle. Holding that the primary, if not exclusive, purpose of the Williams Act was to protect shareholders of the target company, the Supreme Court held that a tender offeror did not have standing to sue for damages under the Act. In determining that to imply a private right of suit by a tender offeror for damages under the Williams Act would not be "consistent with the underlying purposes of the legislative scheme," the Court commented:

> "as a disclosure mechanism aimed especially at protecting shareholders of target corporations, the Williams Act cannot consistently be interpreted as conferring a monetary remedy upon regulated parties, particularly where the award would not redound to the direct benefit of the protected class." 430 U.S. 1, 39, 97 S.Ct. 926, 948, 51 L.Ed.2d 124.

The question at hand is whether, in the light of *Piper,* an offeror (Humana) has standing to sue a competing offeror (TWA and Hilton) for injunctive [1] relief. I conclude that it does. Analysis of *Piper* requires determining not only what it decided but what it did not decide.

At footnote 33, Chief Justice Burger wrote:

> "We intimate no view upon whether as a general proposition a suit in equity for injunctive relief, as distinguished from an action for damages, would lie in favor of a tender offeror under either § 14(e) or Rule 10b–6." 430 U.S. 1, 47 n. 33, 97 S.Ct. 926, 952, 51 L.Ed.2d 124 (1977)

Of course, the footnote merely leaves the question open, and one must look for guid-

---

1. The "WHEREFORE" clause of the proposed second amended and supplemental complaint contains a prayer for damages; but in the wake of *Piper,* the prayer is construed to apply to the pendent causes of action based on state law.

ance elsewhere as to whether a ruling that an offeror has standing to sue a competing offeror for *injunctive* relief would be consistent with *Piper.*

A large body of material in *Piper* itself points toward allowance of standing when the remedy sought is injunctive relief. First, Chief Justice Burger exercised scrupulous care to use the word "damages" whenever he described the "narrow" issue before the court. Second, the opinion of the Court cites with approval Judge Friendly's observation in *Electronic Specialty Co. Inc. v. International Controls Corp.,* 409 F.2d 937, 947 (2d Cir. 1969), that "in corporate control contests the stage of preliminary *injunctive* relief, rather than post-contest lawsuits, 'is the time when relief can best be given' ", 430 U.S. 1, 42, 97 S.Ct. 926, 949, 51 L.Ed.2d 124 (emphasis added). At footnote 26, the opinion states in its own language that ". . . injunctive relief at an earlier stage of the context is apt to be the most efficacious form of remedy." *Id.* at 40 n. 26, 97 S.Ct. at 948. These comments apply to the case at hand. The proposal is in its primary stages. If Humana's allegations that TWA and Hilton have violated the Williams Act are ever to be effectively explored, they must be explored now, since Medicorp's shareholders must have information upon which to act before the expiration of both offers on January 10th.

At least one passage in *Piper* appears affirmatively to suggest that construing the Williams Act to allow a tender offeror the implied right to sue for injunctive relief would be appropriate even though an implied right to sue for damages does not exist. At page 41, 97 S.Ct. at page 949, the court states:

> "In short, we conclude that shareholder protection, if enhanced at all by damages awards such as Chris-Craft contends for, can more directly be achieved with other, less drastic means more closely tailored to the precise congressional goal underlying the Williams Act." 430 U.S. 1, 41, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977).

No remedy can be more "closely tailored" to the needs of the occasion than injunctive relief, when appropriate. The very purpose of injunctive relief is to afford a remedy precisely contoured to the requirements of the situation.

Moreover, as Judge Weinfeld observed in *Applied Digital Data Systems v. Milgo Electronic,* 425 F.Supp. 1145, 1152 (S.D.N.Y. 1977) "allowing [an offeror] to maintain this suit not only provides a remedy to the wronged offeror, but also serves to effectuate the broader purposes of the Williams Act by putting the tools for enforcement of its fair-play provisions into the hands of those most likely and able to make use of them." See also *GAF Corp. v. Milstein,* 453 F.2d 709, 719, 721 (2d Cir. 1971), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972) and *Electronic Speciality Co. v. International Controls Corp.,* 409 F.2d 937, 947 (2d Cir. 1969).

The majority opinion in *Piper* does not render consideration of this factor inappropriate. Justice Stevens, dissenting, criticized the court's decision because in his view it excluded tender offerors whom he described as "the persons most interested in effective enforcement." 430 U.S. 1, 62, 97 S.Ct. 926, 960, 51 L.Ed.2d 124 (1977). The majority opinion answered this point (at footnote 28), saying "our precise holding disposes of many observations made in dissent. Thus, the argument with respect to the 'exclusion' from standing for 'persons most interested in effective enforcement,' *post,* at 62, is simply unwarranted in light of today's narrow holding." *Id.* at 42 n. 28, 97 S.Ct. at 949 (1977). We read the footnote to mean that tender offerors, described by Justice Stevens as "the persons most interested in effective enforcement" are not necessarily excluded from standing in cases not covered by *Piper's* "narrow holding" and that it is appropriate to consider a tender offeror's particular interest in effective enforcement in determining whether he should be accorded standing to sue for injunctive relief.

The view that *Piper* does not bar standing of tender offerors in suits for injunctive

relief is supported by knowledgeable commentators. For example, the writers of "Standing to Sue to Challenge Violations of the Williams Act"[2] conclude:

"The granting of injunctive relief to an offeror, unlike the award of damages, is consistent with the underlying purposes of the Williams Act and should not be detrimental to the interests of the target's shareholders. The Supreme Court pointed out in *Chris-Craft* that 'the Williams Act cannot consistently be interpreted as conferring a monetary remedy upon regulated parties, particularly where the award would not redound to the direct benefit of the protected class.' This concern does not apply to suits for injunctive relief. The only benefit obtained by a tender offeror in such a suit would be the enforcement of the statutory requirements of the Williams Act. The target's shareholders would be protected, and the purposes of the Williams Act would be served, by ensuring that the shareholders could evaluate both the tender offer and the opposition to it based upon accurate statements concerning all material facts. In contrast to a damages award, a grant of injunctive relief would not harm either shareholders who tendered their shares, or those who did not."

This view of the matter does not contradict Judge Ward's decision in *Crane, supra,* that *Piper* bars standing to a tender offeror to sue for damages for violations of § 9 of the 1934 Act. The decision in *Crane* is entirely consistent with *Piper.* Regrettably, however, the fact that it is a damage case makes it altogether unilluminating as to the question whether, under *Piper,* a tender offeror has an implied right to sue for injunctive relief.

These general observations are strengthened in the case at hand by virtue of the particular allegations made and relief sought. For example, it is alleged that TWA–Hilton and Medicorp "have sought unlawfully to deprive Medicorp public shareholders of a fair opportunity to evaluate and choose whether to accept the Humana offer," that defendants now seek to "force Medicorp shareholders to make an immediate investment decision regarding such competing offer" in violation of the securities laws "contrary to the interest of Medicorp and its shareholders," and "the effect of the competing offer is to require Medicorp shareholders to make an investment decision now concerning the purported value of the [TWA and/or Hilton] equity securities [which TWA announced would be used to purchase remaining Medicorp shares after the consummation of its tender offer] and their desirability as an investment compared with the securities to be offered by Humana even though these equity securities have not been registered" with the result that the stockholders have no information about the equity securities which may be included in such a proposed package. The complaint alleges also that various "sensitive payments" have been made by TWA, Hilton or its affiliate Canteen, of such a nature that the facts relating to the payments are material to the decision which a Medicorp shareholder is called upon to make: that is whether to entrust his future to the TWA management or not.

In sum, the thrust of the complaint is to request increased disclosure of the terms of the TWA offer and the character of the TWA management so that Medicorp stockholders may more intelligently choose between the competing Humana and TWA–Hilton offers. Of course, the amended and supplemental complaint furthers Humana's interest as well but the critical factor is not whether Humana may be benefited by the suit but whether the stockholders of the target company would be benefited if the allegations of the complaint are proven to be true and the relief requested is granted. If so the purposes of the Act will be furthered. This is the test by which a tender offeror's right to sue for injunctive relief must be determined; and by this test Humana does have such standing.

The motion to file the second amended and supplemental complaint is granted.

It is so ordered.

**2.** 32 Bus.Law 1755, 1761 (July, 1977).