**STA–RITE INDUSTRIES, INC., Plaintiff,**

v.

**NORTEK, INC. and Fidelity Investment Company, Defendants.**

Civ. A. No. 80–C–471.

United States District Court,
E. D. Wisconsin.

Aug. 1, 1980.

Robert A. Christensen, Foley & Lardner, Milwaukee, Wis., for plaintiff.

Laurence C. Hammond, Quarles & Brady, Milwaukee, Wis., for defendants.

DECISION & ORDER

TERENCE T. EVANS, District Judge.

This case is before the court on the defendants' motion to dismiss.

The plaintiff, Sta-Rite Industries, Inc., filed this action seeking injunctive and de-

claratory relief from the continued acquisition of its stock by Nortek, Inc., allegedly in violation of the Securities Exchange Act of 1934. The complaint was filed on May 28, 1980.

The defendant Nortek began acquiring the common stock of Sta-Rite in late 1979. Additional purchases were made throughout early 1980. After a purchase between April 28 and May 8, 1980, Nortek acquired over 5% of Sta-Rite's outstanding common stock. Upon surpassing that percentage, Nortek filed a Schedule 13D with Sta-Rite, as required by § 13(d)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d)(1). Section 13(d)(1) essentially requires that any person who becomes the beneficial owner of more than 5% of a corporate equity security must, within 10 days of acquisition, send a Schedule 13D filing to (1) the issuer of the security, (2) each exchange where the security is traded, and (3) the Securities and Exchange Commission. The schedule must contain the information specified in § 13(d)(1), and regulations enacted by the Commission pursuant thereto.

Under Item 4 of its Schedule 13D, filed May 9, 1980, Nortek stated the following:

"Item 4. *Purpose of the Transaction.* . . . Nortek does not currently intend to increase its investment in the Common Stock such that it would own or control a majority of the Common Stock or to make a tender offer for the Common Stock."

A First Amended Schedule 13D was filed May 15, 1980. It disclosed the purchase of an additional 500 shares, bought May 9, and 900 shares bought May 12. A Second Amended Schedule 13D was filed May 17, disclosing the purchase, on May 16, 1980, of an additional 30,500 shares. The Amended 13D's contain the same statement of purpose that appeared in the May 9 schedule.

Sta-Rite alleges that the statement of purpose as filed in the 13D's is materially false and misleading. It seeks a declaration that Nortek violated § 13(d) of the Act, and Rules 13d–1 and 13d–101 promulgated thereunder. Upon such declaration, injunctive relief is sought.

Nortek and its co-defendant, Fidelity Investment Company, alleged in the complaint to be a recently created corporation formed by Nortek to serve as a nominee to receive the acquired stock, filed a motion to dismiss on June 6, 1980. The motion challenges Sta-Rite's standing to bring the suit.

Whether the question of standing is one which goes to the court's subject matter jurisdiction, F.R.C.P. 12(b)(1); *Gateway Industries, Inc. v. Agency Rent-A-Car, Inc.,* 495 F.Supp. 92 at 95 (N.D.Ill.1980), or to a claimed lack of jurisdiction for failure of the complaint to state a claim upon which relief can be granted, F.R.C.P. 12(b)(6); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 566, 99 S.Ct. 2479, 2484, 61 L.Ed.2d 82 (1979); *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), is not of particular significance. It is a distinction without a substantive difference. In either case, a finding adverse to Sta-Rite terminates the action.

It is the position of Nortek that Sta-Rite does not have standing to bring this action for equitable relief under § 13(d). Sta-Rite counters by citing a long line of authority holding that a target corporation, as Sta-Rite is alleged to be here, has standing to bring an action for equitable relief in its capacity as issuer of the securities purchased. *Dan River, Inc. v. Unitex Limited,* 624 F.2d 1216 (4 Cir. 1980); *GAF Corp. v. Milstein,* 453 F.2d 709 (2 Cir. 1971); *cert. den.* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972); *Wellman v. Dickinson,* 475 F.Supp. 783 (S.D.N.Y.1979); also see, *Chromalloy American Corp. v. Sun Chemical Corp.,* 611 F.2d 240 (8 Cir. 1979); *SEC v. Savoy Industries,* 587 F.2d 1149 (D.C.Cir. 1978), *cert. den.* 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979); *Kirsch Co. v. Bliss & Laughlin Industries, Inc.,* 495 F.Supp. 488 (W.D.Mich.1980). The great weight of the decisional authority supports Sta-Rite's position over that advanced by Nortek.

The holding in these cases that a private cause of action for equitable relief exists

under § 13(d) is rooted in *J. I. Case Company v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). The Supreme Court in *Borak* found an implied cause of action for damages in favor of shareholders for losses resulting from deceptive proxy solicitations in violation of § 14(a) of the Act. 377 U.S. at 430–434, 84 S.Ct. at 1559–1561.

Although *Borak* involved a claim for damages under § 14 of the Act, the Supreme Court has considered the merits of a petition by a target corporation for equitable relief under § 13(d). *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975). In *Rondeau*, the court concluded that a private litigant must show "irreparable harm" before it can obtain injunctive relief in a suit under § 13(d). As to the issue of standing to bring a 13(d) action, however, the court stated, at 62, 95 S.Ct. at 2078:

"... Although neither the availability of a private suit under the Williams Act nor respondent's standing to bring it has been questioned here, this cause of action is not expressly authorized by the statute or its legislative history. Rather, respondent is asserting a so-called implied private right of action established by cases such as *J. I. Case Company v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Of course, we have not hesitated to recognize the powers of federal courts to fashion private remedies for securities laws violations when to do so is consistent with the legislative scheme and necessary for the protection of investors as a supplement to enforcement by the Securities and Exchange Commission."

The Supreme Court in *Rondeau* never directly confronted the issue of whether an issuing corporation has a private cause of action under 13(d) to enjoin purchase of its stock. Similarly, the Seventh Circuit Court of Appeals has not directly faced the question. But see, *Bath Industries, Inc. v. Blot*, 427 F.2d 97 (7 Cir. 1970), where the court assumed without deciding that such a cause of action existed. Although both the Supreme Court in *Rondeau* and the Seventh

Circuit in *Bath* went to the altar, neither considered how they got into the church.

Three 1979 United States Supreme Court decisions and a 1980 decision from the Northern District of Illinois, raise serious doubts as to the vitality of the line of authority which flows from the 1964 decision in *Borak* to find a private cause of action for equitable relief under § 13(d). *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Company v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). These cases clearly mark a trend toward narrowing the *Borak* standard implying private causes of action under the Securities Exchange Act. See, *Gateway, supra.*

The facts in the Supreme Court's decision in *Touche* are not directly on point. However, the court's holding and the rules of construction it applied are particularly instructive in consideration of the jurisdictional question presented here. *Touche* involved the question of whether customers of securities brokerage firms, which are required to file certain financial reports under § 17(a) of the Act, have an implied cause of action against the firms for damages under the Act. It appears that the language of *Touche* denying implied private enforcement rights speaks to more than the narrow § 17 situation the Court had before it. Indeed, the court begins the opinion with a broad statement of the issue:

"Once again, we are called upon to decide whether a private remedy is implicit in a statute not expressly providing one." 442 U.S. at 562, 99 S.Ct. at 2482.

The nature of § 17(a) is similar to that of § 13(d). § 17(a) had required:

"Every national securities exchange, every member thereof, ... and every broker or dealer registered pursuant to ... this title, shall make, keep, and preserve for such periods, such accounts, correspondence, ... and other records, and make such reports, as the Commission by its rules and regula-

tions may prescribe as necessary or appropriate in the public interest or for the protection of investors." 442 U.S. at 568–9, 99 S.Ct. at 2485.

The Supreme Court described § 17(a) in the following manner:

"In terms, § 17(a) simply requires broker-dealers and others to keep such records and file such reports as the Commission may prescribe. It does not, by its terms, purport to create a private cause of action in favor of anyone. It is true that in the past our cases have held that in certain circumstances a private right of action may be implied in a statute not expressly providing one. but in those cases finding such implied private remedies, the statute in question at least prohibited certain conduct or created federal rights in favor of private parties. (citations omitted) . . . By contrast, § 17(a) neither confers rights on private parties nor proscribes any conduct as unlawful." 442 U.S. at 569, 99 S.Ct. at 2485.

The court concluded that no private cause of action could be implied. It considered congressional silence in not providing such a remedy, and the overall scheme of the Act including provisions *expressly* granting some private causes of action.

The *Touche* court also considered the tests established in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) for determining whether an implied private cause of action exists. It summarized these tests by concluding that "the central inquiry remains whether Congress intended to create, either expressly or by implication a private cause of action". 442 U.S. at 575, 99 S.Ct. at 2489.

The vitality of *Borak* is, in this court's opinion, substantially undercut by the Supreme Court's statements in *Touche* that:

"We do not now question the actual holding of that case, but we decline to read the opinion so broadly that virtually every provision of the securities Acts gives rise to an implied private cause of action. E. g. *Piper v. Chris-Craft Industries, Inc.* [430 U.S. 1, 97 S.Ct. 926, 51

L.Ed.2d 124 (1977)]." 442 U.S. at 577, 99 S.Ct. at 2490.

and,

". . . To the extent our analysis in today's decision differs from that of the Court in *Borak*, it suffices to say that in a series of cases since *Borak* we have adhered to a stricter standard for the implication of private causes of action, and we follow that stricter standard today. *Cannon v. University of Chicago, supra*, 441 U.S. at 688–709, 99 S.Ct. at 1953–1964. The ultimate question is one of Congressional intent, not one of whether this court thinks that it can improve upon the statutory scheme that Congress enacted into law." 442 U.S. at 578, 99 S.Ct. at 2491; see, *Transamerica Mortgage Advisors, Inc. v. Lewis, supra*, 100 S.Ct. at 245.

The exhaustive and persuasive opinion of Judge Aspen in *Gateway Industries, supra*, is particularly instructive on the trend away from implying private causes of action for equitable relief under the Securities Exchange Act of 1934.

The court in *Gateway* followed the recent Supreme Court opinions in holding that the threshold question in resolving this issue is simply whether Congress intended to create the private right of action sought. If not, the inquiry goes no further. See, *Transamerica Mortgage Advisors, Inc., supra*, 100 S.Ct. at 249. By placing the emphasis on the intent of Congress, the court concluded that the focus has shifted away from the "desirability", as far as the target corporation is concerned, of implying private causes of action under the Act.

*Gateway* concluded that Congress intended only the SEC to have standing to bring a suit for equitable relief under § 13(d). Its conclusion in this regard is based on the SEC's express authority to investigate a 13(d) violation under § 20 of the Act; its authority to bring suit for an injunction or writ of mandamus in the appropriate United States district court as provided in § 21(d) and (e); and its authority to submit evidence of any violation to the Attorney General for possible criminal proceedings against the violator as provided in § 21(d).

In short, the holding in *Gateway* leaves the private litigant with the remedy of filing a complaint alleging § 13(d) violations with the SEC first, and not with the district court. It is then up to the SEC to investigate and ultimately decide whether or not to seek equitable relief in the district court. The private litigant has only a district court action for damages, expressly authorized in § 18(a) of the Act.[1]

The court in *Gateway* was particularly reluctant to imply a private equitable remedy in light of the express provision for a private damage remedy under § 18(a). Indeed, the United States Supreme Court, *in dictum*, stated in *Touche*:

"There is evidence to support the view that § 18(a) was intended to provide the exclusive remedy for misstatements contained in any reports filed with the Commission, including those filed pursuant to § 17(a)." 442 U.S. at 573–4, 99 S.Ct. at 2488.

After considering the available remedies under § 18(a) and § 20, the *Gateway* court concluded by noting:

". . . The detailed enforcement scheme set forth in the Exchange Act clearly indicates that Congress directed its attention to the manner in which the Act's provisions would be enforced. Therefore, it is unlikely that Congress simply 'absentmindedly forgot' to mention an intended private right of action for injunctive relief under § 13(d). *See Transamerica* (100 S.Ct. at 247)." *Gateway Industries, Inc.*, 495 F.Supp. at 98.

The *Gateway* court also considered the legislative history of the Williams Act which supports the proposition that the sole purpose of the Act is to protect investors. See, *Piper v. Chris Craft Industries, Inc.*, 430 U.S. 1, 26–35, 97 S.Ct. 926, 941–946, 51 L.Ed.2d 124 (1977). The history of the Act persuasively lends support to the conclusion that Congress did not intend to provide a private right of action under 13(d).

Also important to the *Gateway* court was the nature of § 13(d). It found 13(d) to be similar to the statutes the Supreme Court in *Touche* and *Transamerica* found to be without implied private equitable enforcement rights. In similar fashion, § 13(d) does not create liability; it only requires the filing of certain statements with the issuing corporation and the SEC.

The *Gateway* court chose also not to imply a private cause of action for equitable relief under 13(d), either for shareholders directly, or for the issuing corporation on their behalf. Although it considered this to be a "closer question" than that regarding a target corporation suing on its own behalf, the court could find no evidence of congressional intent to create a private cause of action.

This court concurs with the reasoning of the *Gateway* court, and its application of the *Touche* and *Transamerica* decisions to private causes of action under § 13(d). To that extent, this court disagrees with the recent interpretation of the district court for the Western District of Michigan in *Kirsch Company v. Bliss & Laughlin Industries, Inc.*, 495 F.Supp. 488 (W.D.Mich. 1980), cited by the plaintiff.

The nature and purpose of 13(d), the history of its enactment, and the statutory scheme of the Exchange Act which includes express provisions for private and SEC relief in the district courts, strongly support the conclusion that Congress never intended to provide a private right of action for equitable relief under the section.

The filing requirements of 13(d) are for the protection of investors, and are to be supervised by the SEC. Obviously, it would be too much of a burden for the SEC to independently investigate each Schedule 13D filing to determine if there has been compliance with § 13(d). Instead, it is for the private issuing corporation, or its shareholders, to raise the issue of noncompliance

---

1. Although § 18(a) authorizes persons to seek damages "at law or *in equity* in any court of competent jurisdiction", any contention that a private injunctive action is included therein is rejected. "Damages", by specific inclusion, is the only available proscribed remedy under 18(a).

initially with the SEC, and not the courts. It is then incumbent upon the SEC to investigate and bring an action in district court if it deems such to be necessary.

This court understands the concerns of target corporations and their stockholders that relief may not be expeditiously obtained by going through the SEC as opposed to quick access to the courts. They fear swift takeover attempts before the SEC acts. While this is a legitimate concern, it is difficult to imagine that Congress would authorize direct access to the district courts for all corporations and/or stockholders who feel threatened by a purchaser's filing of a Schedule 13D. Absent any expression of congressional intent to provide an avenue of private equitable relief on an allegation that a Schedule 13D filing is false, this court chooses not to follow the precedent which implies such swift access by private litigants to the courts under § 13(d) of the Act. Instead, this court adopts the reasoning of the court in *Gateway* and concludes that the defendants' motion to dismiss must be granted because the court is without jurisdiction over the subject matter of the dispute.

Therefore, IT IS ORDERED that the defendants' motion to dismiss is granted.